[No. 37420.   Department One.   May 27, 1965.]

LLOYD P. JONES *et al.*, *Respondents*, v. NATIONAL BANK OF COMMERCE OF SEATTLE *et al.*, *Appellants.*\*

*Halverson, Applegate, McDonald & Weeks,* for appellants.

*J. P. Tonkoff* (of *Tonkoff, Holst & Hanson*), for respondents.

\*Reported in 402 P.2d 673.

STAFFORD, J.†—This is an appeal from a judgment awarding damages for breach of warranty to the plaintiffs.

In 1950, Amos and Marie Brulotte purchased the Four Daughters Ranch in Kittitas County. Amos died in 1953, and thereafter, the ranch was held by the National Bank of Commerce and Marie Brulotte as co-trustees under Amos's will and by Marie individually, as his widow. They will be referred to hereafter as the defendants.

James Roan managed the ranch for the defendants. In 1955, Mr. Roan transferred part of the ranch's sprinkler system to other property. In 1956, Mr. Roan sold the balance of the system to Glenn Rohn. The disposition of the sprinkler was known to the defendants and was reflected in their records.

Lloyd P. Jones and wife (hereinafter called the plaintiffs) owned a cattle ranch in Colorado. After losing their water supply, they began a search for another ranch on which to continue their operation. Grazing area, hay production, water rights and irrigation were prime factors in determining the number of cattle a ranch would support.

C. Lee Smith represented the plaintiffs in their search for a suitable ranch. Prompted by an advertisement, Mr. Smith corresponded with the defendants. This culminated in a trip to Yakima for the purpose of making further inquiry about the Four Daughters Ranch.

In October of 1961, negotiations were carried on with Mr. Braden of the defendant bank's trust department. In answer to direct inquiries about irrigation, Mr. Braden advised Mr. Smith that a sprinkler system took over when the creeks and water rights were down. He also stated that the system was "real good" and that it would cost about $27,000 to install a similar one. Actually, the bank records indicated that there was no sprinkler system.

Mr. Smith was unaware that Mr. Braden's representations were false. He was unfamiliar with sprinkler systems and

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).   · ·  '

thus acted in reliance on the statements. During an inspection of the premises, he saw certain pipes which he concluded were part of the sprinkler system. Actually, the pipes were only a part of the pumping system which had been removed from the sprinkler system in earlier years.

Although Mr. Braden's representations were false, they were not made with an intent to defraud. Nevertheless, they were material and were intended to induce a sale to plaintiffs.

After preliminary negotiations, plaintiffs' attorney dictated an agreement that provided for conveyance of the ranch by warranty deed and transfer of the personal property by bill of sale. The agreement also specifically listed certain machinery. However, it provided that the list was not exclusive. The sprinkler system was not among the items designated as "machinery."

The defendants accepted the agreement on October 23, 1961, and Mr. Braden and the plaintiffs' attorney arranged to handle details of closing the transaction by correspondence and long distance telephone.

Mr. Smith became suspicious that Mr. Roan was improperly removing equipment listed in the agreement. As a result, Mr. Smith and Mr. Braden visited the ranch on October 27th. During the trip, Mr. Braden again discussed the sprinkler system with Mr. Smith. As they approached the ranch, Mr. Braden pointed to a pump and commented: "This is where we take the water off for the sprinkler system." Mr. Smith observed the pump and saw some pipe partially visible in the grass.

As part of the closing transaction, Mr. Braden advised plaintiffs' attorney by letter dated October 31st: ". . . The personal property including farm machinery . . . can be conveyed by Bill of Sale. . . . The sprinkler system can be included in the deed. . . ." Thereafter, on November 15, 1961, defendants conveyed the ranch and the personal property to plaintiffs by warranty deed and bill of sale. Both the deed and bill of sale contained the following language: ". . . Together with the entire sprinkler

system installed and used on the real estate above described; . . ."

After accepting delivery of the real and personal property, Mr. Smith discovered that there was no sprinkler system. Moreover, when he attempted to run water through the main line, he discovered that it was badly corroded and full of holes.

The reasonable cost of a sprinkler system constructed of smaller pipe, exclusive of a pump and motor and not including the cost of laying, would be $19,981.51. The trial court entered judgment for plaintiffs in that amount.

■ The defendants' first two assignments of error cannot be considered. They merely refer to the trial court's "holding" and fail to set out verbatim any portion of the findings of fact claimed as error. The expressions "erred in holding" or "holding", followed by a general statement, are insufficient to assign error to the trial court's finding of fact. Rule on Appeal 43, RCW vol. 0; *Koster v. Wingard,* 50 Wn.2d 855, 314 P.2d 928 (1957); *Browning v. Browning,* 46 Wn.2d 538, 283 P.2d 125 (1955).

■ Assignments of error No. 5 through No. 8 are without merit. Each pertains to a finding of fact that is supported by substantial evidence. Even though we might have resolved the factual dispute in a different way, the constitution does not authorize us to substitute our findings for those of the trial court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The defendants urge that it was error for the trial court to find that they failed to establish mutual mistake by clear, cogent and convincing evidence. We do not agree. A review of the record persuades us that the finding is supported by substantial evidence. It will not be disturbed. *Thorndike v. Hesperian Orchards, Inc., supra.* Consequently, the trial court properly refused to consider the reformation of a deed based on mutual mistake. There was no mutual mistake to support it. Defendants' fourth assignment of error is not well taken. *Elmore v. Graystone of Centralia,* 63 Wn.2d 250, 387 P.2d 75 (1963).

The defendants concede that evidence to justify the reformation of a deed on the ground of mutual mistake must be clear, cogent and convincing. *Liming v. Teel*, 46 Wn.2d 762, 284 P.2d 1110 (1955). But they contend that the trial court incorrectly equated the standard of "clear, cogent and convincing evidence" with "uncontradicted evidence." This, they say, imposed an excessive burden upon them.

■ We have searched the record and find nothing to substantiate the defendants' assertion, unless it is the trial court's reference to *Slater v. Murphy*, 55 Wn.2d 892, 339 P.2d 457 (1959), in the oral opinion. But, *Slater* merely holds that reformation will not be granted upon a preponderance of the evidence or upon a probability, but only upon a "certainty of the error." "Certainty of the error" is not the equivalent of "uncontradicted testimony of error."

■ Defendants' claim of error contains two additional defects. First, error cannot be assigned upon an oral opinion. *Becwar v. Bear*, 41 Wn.2d 37, 246 P.2d 1110 (1952). Second, the defendants have failed to indicate any place in the record where the trial court adopted the challenged test. Rule on Appeal 42(f), RCW vol. 0, *Glazer v. Adams*, 64 Wn.2d 144, 391 P.2d 195 (1964); *Williams v. Andresen*, 63 Wn.2d 645, 388 P.2d 725 (1964).

Error is assigned because the contract was not reformed on the basis of plaintiffs' inequitable conduct, coupled with the defendants' unilateral mistake. The court neither made a finding that the plaintiffs had been inequitable nor was error assigned to its failure to so find. Moreover, the defendants have failed to indicate clearly and definitely any portion of the record to support their assertion of such conduct. We have found none. The assignment of error is not well taken. Rule on Appeal 42(f), RCW vol. 0; *Glazer v. Adams, supra*; *Williams v. Andresen, supra*.

■ The defendants aver that all prior oral conversations were merged in the agreement dictated by plaintiffs' attorney and further urge that the warranty deed and bill of sale are controlled by the agreement. However, the applicable rule is otherwise. A deed made in full execution of a

contract for the sale of land merges the provisions of the contract. This rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed. *Davis v. Lee*, 52 Wash. 330, 100 Pac. 752 (1909).

The following assignment of error cannot be considered:

[T]he trial court also erred in holding that the physical examination of the premises made by the plaintiffs precluded them as a matter of law from any reliance on any statement or representation made by the defendants.

The trial court neither made a finding of fact nor a conclusion of law in the form stated.

■ It is possible that the assignment of error was intended to say: " . . . the trial court also erred in *failing to hold* . . ." We are not at liberty to redraft the assignment of error in a form we believe the defendants may have intended. The burden of drafting a proper assignment of error rests upon an appellant.

Plaintiffs were awarded damages in the sum of $19,981.51. The defendants contend that the trial court used an incorrect measure of damages which resulted in an excessive judgment.

Two methods of evaluating damages were in evidence. (1) replacement value; and (2) the difference in value between the ranch with a sprinkler system and the ranch without it. The trial court adopted the lesser of the two figures. The amount is supported by substantial evidence; we cannot disturb it. *Thorndike v. Hesperian Orchards, Inc., supra.*

■ No authority has been cited to support the defendants' contention that an incorrect measure of damages was employed. An assignment which is not supported by cited authority will not be considered unless it appears on its face that the assignment is well taken. *Frey v. Kent City Nursing Home, Inc.*, 62 Wn.2d 953, 385 P.2d 323 (1963); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962).

Finally, plaintiffs urge that Rule on Appeal 62, RCW vol. 0, should be invoked. They contend that the appeal was

taken only for delay and ask for $2,500 additional damages. We have carefully reviewed the record and believe that the appeal was prosecuted in apparent good faith. Plaintiffs' motion is denied.

The judgment is affirmed.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.